And turn to our next case, which is Kaskel v. Compagnone. Hello, John Williams. You want to wait a second? Mr. Williams, we'll wait for that courtroom to clear so we can hear you. You want to sit down just for a second, Mr. Williams? We've got a minute or so before the courtroom will clear, I think. I've been sitting so long I don't mind standing. It's up to you then. Silly me, I thought they were here for the first cases. Okay. I think it's quieted down a bit. Mr. Williams, you want to proceed? Thank you. If it pleases the court, I'm John Williams on behalf of Dr. Kaskel. Dr. Kaskel was charged with four felonies on the basis of an affidavit submitted by the defendant, which materially misrepresented a number of critical facts. That affidavit relied on purported statements by four individuals. Number one, the children's pediatrician. Number two, the plaintiff's estranged wife. Number three, the plaintiff's former wife. And number four, one of the plaintiff's employees. We demonstrated in our papers in opposition to the motion for summary judgment that significant portions of the defendant's representations about the statements made by Dr. Kaskel's former wife and the statements supposedly made by his employee simply were misrepresentations. But even if you strike all that, we're still left with the mother's report as well as the doctor's examination and conclusions. Isn't that enough for probable cause? Well, that's exactly where I was headed, because it was the conclusion of Judge Underhill that the estranged wife's statements were buttressed by the statements of the pediatrician. But in coming to that conclusion, the court made the mistake of believing that the pediatrician had stated that she observed a medical condition, repeated vaginal discharge on the part of the daughter, which was consistent with sexual assault. In fact, there is nothing in the arrest warrant affidavit to support that. The arrest warrant affidavit simply says the pediatrician observed vaginal discharge. Nothing about the meaning of that. About the state police detective, though, her experience with these cases, she offers up that, in my experience, these kinds of diagnoses support abuse. But she didn't say that in her application for the arrest warrant. She didn't tell that to the issuing magistrate. Therefore, the judge who issued the warrant had no basis for drawing such a conclusion. She put that statement in her affidavit in support of the summary judgment motion. And I think that where the court went astray was in conflating those two affidavits. The issuing judge had no such allegation presented to him, so that all you had was the bland statement, well, it was vaginal discharge. So what? In fact, as I point out in my brief, the medical literature strongly takes the position that that is not evidence of sexual assault. But really, the bottom line is that the issuing judge had no basis for coming to that conclusion. So what does that leave you? That leaves you a completely neutral statement by the pediatrician who's simply reporting the allegations of the estranged wife. So we're back to the claims of the estranged wife. And in that respect, although the defendant did state in her arrest warrant affidavit that there was a divorce proceeding pending, she failed to follow up on that issue. And she should have given the reality that all that was there was the uncorroborated allegations of the estranged wife. Well, it says in the affidavit, though, the mandated reporter, this is the pediatrician, stated the five-year-old daughter has been treated for these conditions twice in the recent past. And the reporter expressed that, according to witness number one, the fully toilet-trained five-year-old girl is now having two other conditions. But the introduction to the affidavit, the state police detective does say that she's been involved in a lot of sexual assault investigations, physical evidence, things like that. So why can't you draw the inference that maybe she knows something about this kind of physical evidence? She doesn't say that. She doesn't say that. You might as well say that, based on her training and experience, the fact that this man works part, in addition to being an anesthesiologist, he works part-time as a hairdresser, is evidence. It's a neutral claim. Without putting a connection in there, where's the probable cause? So that you're left, you're really left with nothing except the claims of the estranged wife. And in that regard, as this court has pointed out recently, actually, in the McGee case, just in 2014, as I've cited in my brief, and as the Eastern District has held repeatedly between 2012 and 2014, when you have only the uncorroborated allegations of a person who does not appear to be neutral, who you have reason to suspect has an accident. But then she called one of the two other women, Cheryl Marinone. And lied about it. After the wife had said, Marinone will tell you these things. And then the trooper detective called Marinone and said, I've heard this. Is this true or not? That's taking an additional step, though, isn't it? But she lied about what Marinone told her. That's why she called Marinone. I'm sorry? That's why she called Marinone, the detective. No, no, no. The detective lied about what Marinone said. That's the point. Of course we assume that the ex-wife was lying about it. That's not the point. Marinone submitted an affidavit, which is part of our opposition to summary judgment, saying the statements that the trooper attributed to me when I was being interviewed are statements I did not make. That's classic Franks against Delaware. And so, again, I get back to where we were. She had nothing. She lied about Marinone. She lied about Audette. And the pediatrician's statements were neutral. That left just the estranged wife, and given the estranged wife's obvious interest in the case, she had an obligation to do some reasonable follow-up without unduly stressing herself, which she could have done because all the evidence she needed to show that the ex-wife was lying was right there in the judicial district courthouse in Rockville, Connecticut, where she was dealing with the state's attorney. So without any under-effort at all, she could have unearthed the affidavit that was in the family court file, and she could have talked to the family services officer who had to interview her in connection with the divorce case. Judge Suarez was available to her. All of these things would have further shown that the estranged wife was lying, but she didn't do it. She didn't do it, and that itself suggests at a minimum recklessness and quite possibly intentional wrongdoing. The intentional wrongdoing also was shown by the fact that she lied about both what the ex-wife said and about what the employee said. I think this should be reversed. Thank you, Mr. Williams. And now we'll hear from the State. Ms. Motherway. Good morning, Your Honors. May it please the Court. As an initial matter, I wish to correct a statement that was just made with respect to Detective Compagnon. She did put in her affidavit that although she had spoken to Ms. Marinone and Ms. Marinone, the wife had said that Ms. Marinone would corroborate the fact that Dr. Caskell watched child pornography. Ms. Marinone flat out told her no during that interview, and the trooper put that into the affidavit that she prepared in support of the application for the search warrant. She basically put forth the good and the bad, where Ms. Marinone did not corroborate that. So to suggest that the trooper lied and the other things that she put in, she put in a very important denial of an allegation that had been made by the wife. She put that before the Court for the Court to consider. I think that Mr. Williams' point with respect to the fact that no one drew a straight line here in the application for the affidavit is an interesting one. It does say something for the fact that under the statute to which this physician made the report, under the statute which she made the report, it is a mandated reporter under Connecticut General Statute Section 17A-101A1 who must report if they have reasonable cause to believe that any child under the age of 18 has been abused or neglected. Implicit in a physician's report would be too on pursuant to that statute, which is what we have here indisputably, is that she was reporting her reasonable cause to believe that a child under the age of 18 had been abused or neglected. It's of import here as well that we have abuse or neglect of children being reported by a physician. And then we have the risk of injury that Judge Underhill cited as a very significant crime that he thought was implicated by the uncontradicted report of the mother with respect to the father's behavior, while in front of the computer with the children being present. That's a felony. If this court is at all troubled, and I have to back up, with respect to Judge Underhill's reliance on his reading, there wasn't elision, people elided here from the report, the substance of the report. And then I think there was an assumption there that everybody understood the meaning of the report of the physician. And I think that implicit, what Judge Underhill actually said at one point, and it appears in the appendix on page 91, and it also appears on plaintiff's brief, is we have a mandated reporter reporting in effect that the children are presenting with conditions that are consistent with child abuse, which I think is pretty significant. And that appears in the appendix on page 86 as well. And that would be appendix 2, I believe. So the judge didn't really make a mistake here. When he used the words in effect, he was drawing that conclusion from the fact that we have a physician calling the mandatory reporting line at the Department of Children and Families, and making certain statements which a trooper who has special training would interpret as signifying that the children had been subject to some type of sexual abuse. But in anticipation of Mr. Williams' argument, early on in this case as a former prosecutor, I put together our motion for summary judgment to address exactly this issue. Consistent with that, our motion for summary judgment had an affidavit from the trooper laying out her probable cause, because even if this trooper's warrant were invalid, she had probable cause at the time she arrested this individual in his public place of business, his hairdressing business. There is no case in Connecticut state law that addresses that. One can follow the Supreme Court of the United States' rulings and come up with that conclusion. One can also look to a sister state from the First Circuit, which is Massachusetts, where in two separate cases it's been held at least that it is correct that police may arrest an individual in public, notwithstanding an invalid arrest warrant, if they possess independent probable cause at the time of the arrest. And that's Commonwealth v. Fielding. So what was that here? You're saying if the warrant was defective, if you find something else out, you can arrest on the basis of observation? If the warrant was defective because the officer could have been defective merely in a ministerial fashion and it could get thrown out. In Massachusetts, if a warrant was defective, he need only have probable cause, he or she, Detective Campagnon, need only have probable cause to believe that the defendant has committed a felony when they meet face to face. So I'm saying that probable cause is the determination at the moment of arrest under Michigan v. DeFilippo, under Beck v. Ohio. She had probable cause. And as Mr. Williams pointed out, perhaps it wasn't completely spelled out in that affidavit, but this detective's particular background training and experience enabled her to form the belief that this individual had committed a felony to risk of injury to minors and to arrest him with or without a warrant. So my point is simply that if this court were to in any way wish to fail to accept the proposition, that it's implicit in the physician's report as a mandated reporter on a DCF hotline of her reasonable cause to believe that the children are being abused without exactly saying that, that need not vitiate the validity of Detective Campagnon's arrest. She clearly had probable cause. Her background training and experience is as laid out in her affidavit in support of the motion for summary judgment, in our argument in the motion for summary judgment, in our argument before the court, lower court, and in our argument before this court as presented in our brief. The probable cause is ultimately determined under Connecticut law here, where Connecticut general statute section 54-1FB authorizes a police officer to conduct a warrantless arrest of, quote, any person who the officer has reasonable grounds to believe he has committed or is committing a felony. And the phrase reasonable grounds to believe is under Connecticut law synonymous with probable cause, and that's state versus now in Connecticut law. If the court has any further questions, I'll be happy to answer them. All set. Thank you. Thank you. Mr. Williams, you have a few minutes to rebut. The thrust of the defendant's argument, I confess, takes me a little bit by surprise, since it's not anywhere presented in the brief of the appellee, and I have to say I think it's a novel one. But in reality, this is a case about an arrest pursuant to a warrant, and the evidence is more than sufficient to create a jury question of whether that warrant was issued because of affirmative misrepresentations and a minimum reckless withholding of other exculpatory evidence. And it seems to me that's the issue, not whether or not they could have had an alternative basis to arrest my client, which, in fact, they have never claimed until today. With regard to the mandated reporter issue, the mandated reporter, that is to say the pediatrician, had a clear statutory duty to notify the Department of Children and Families once the mother of her patients made these allegations to her. She would have been subject to arrest had she not. It has nothing to do with the physical examination. He treated these children, though, too. I'm sorry? He treated the children, too. He treated the two children. He was the physician for the children. It wasn't just he was reporting what she told her, but he had examined and treated these two kids, too. But you will note that at no point did this mandated reporter contact DCF and say, gee, I'm concerned, I've got a patient who has vaginal discharge. That didn't happen. It was the fact that the mother came and said, you know, your patients, my husband's abusing them. So, of course, she had to report it. But the bottom line in this case is that there is absolutely nothing except the uncorroborated claim of the estranged wife. The trooper misrepresented what the former wife had said. She misrepresented what the employee had said. And she failed to conduct an easily conductible investigation that would have further demonstrated that Simmi Caskell was simply lying, that she was clearly a mentally disturbed person who manufactured these issues, having testified in the family court, having submitted to a lengthy interview by the family relations officer, having filed her own affidavits in the family court, all against Dr. Caskell, none of which even hinted at any claim that he was abusing those children, all of which would have, in fact, defeated probable cause, and this warrant would never have issued but for the wrongdoing of this trooper. All we're saying here is we're entitled to our day in court. We're entitled to present this evidence that was not enough to justify granting summary judgment in the trooper's favor and taking away Dr. Caskell's right to have his day in court. So we ask you to reverse and send it back for trial. Thank you, Mr. Williams. We'll reserve decision.